**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-65

UNITED STATES TAX COURT

THOMAS ALLEN GULLION, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15560-12S.                    Filed August 14, 2013.

Thomas Allen Gullion, pro se.

Robert M. Romashko, for respondent.

SUMMARY OPINION

KERRIGAN, Judge: This case was heard pursuant to section 7463 of the

Internal Revenue Code in effect when the petition was filed. The decision to be

entered is not reviewable by any other court, and this opinion shall not be treated

as precedent for any other case.

Respondent determined deficiencies and penalties as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2008 | $9,652 | $1,930 |
| 2009 | 8,582 | 1,716 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

The issues for consideration are (1) whether petitioner engaged in musical activities with the objective of making a profit within the meaning of section 183 and (2) whether petitioner is liable for accuracy-related penalties under section 6662(a).

## Background

Petitioner resided in Wisconsin when he filed the petition.

Petitioner began performing on the saxophone at the age of eight. He has played professionally since the age of 16. He attended Indiana University, where he studied under David Baker, a distinguished professor of music and jazz education. He also toured with J.J. Johnson, a master of bebop trombone.

In 1995 petitioner moved to Chicago, Illinois, and worked solely as a musician. In 2002 petitioner moved to Wisconsin and started working as a computer programer, but he continued to play the saxophone. Since moving to Wisconsin petitioner has organized the Driftless Jazz Festival in Southwestern Wisconsin and has recorded four compact disks (CDs), including "Catharsis" in 2006 and "Carswell" in 2009. "Carswell" was advertized in the May 2010 edition of JAZZed Magazine.

For 2008 petitioner and his wife reported $43,642 in wages, as well as $70,223 of income on a Schedule C, Profit or Loss From Business, from a specialized design services firm. According to information returns for 2008, $42,951 of these wages was attributable to petitioner. For 2009 petitioner and his wife reported $133,245 in wages, of which $131,897 was attributable to petitioner.

Petitioner reported activities related to his music on a second Schedule C for 2008 (Schedule C-1) and a Schedule C for 2009. For 2008 petitioner reported gross receipts of $2,625 and expenses of $35,541 from his activities as a musician. For 2009 he reported gross receipts of $2,931 and expenses of $28,934 from his musical activities. Petitioner did not profit from his musical activities from 2004 to 2010; however, petitioner showed a small profit in 2011. The following table reflects his gross receipts and net losses from his musical activities:

| Year | Gross receipts | Net loss |
|------|---------------|----------|
| 2004 | $1,483 | $12,163 |
| 2005 | 530 | 11,842 |
| 2006 | 983 | 17,872 |
| 2007 | 1,615 | 20,315 |
| 2008 | 2,625 | 32,541 |
| 2009 | 2,931 | 26,003 |
| 2010 | 3,154 | 9,467 |
| Total | 13,321 | 130,203 |

Petitioner provided several documents during the examination of petitioner's joint 2009 and 2010 Federal income tax returns: an advertisement from the May 2010 edition of JAZZed Magazine; a depreciation schedule; a copy of an electronic press kit from the Web site for his musical activity; a mileage log for 2008; and a copy of his 2011 Federal income tax return, which shows that he made a profit of $647 from his musical activities.

## Discussion

### I. Musical activities

In general the Commissioner's determination set forth in the notice of deficiency is presumed correct. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). In certain circumstances, however, the burden of proof shifts to

the Commissioner.  Sec. 7491(a)(1).  Petitioner does not contend that the burden of proof should shift to respondent.

Section 162 permits a taxpayer to deduct ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business.  Section 183 generally limits the amount of deductions for an activity that is not entered into for profit to the amount of income that the activity generates.  See sec. 183(b).

To be engaged in a trade or business within the meaning of section 162(a), an individual taxpayer must be involved in the activity with continuity, regularity, and the primary purpose of deriving a profit.  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  Deciding whether the taxpayer is carrying on a trade or business requires an examination of all of the facts in each case.  Id. at 36.

We are satisfied that petitioner's musical activities were conducted with continuity and regularity during the years in issue.  Nevertheless, a taxpayer must conduct the activity with the requisite profit motive or intent for the activity to be considered a trade or business.  See id.; see also Churchman v. Commissioner, 68 T.C. 696 (1977).  The taxpayer generally bears the burden of proving that the requisite profit objective existed.  Westbrook v. Commissioner, 68 F.3d 868, 876 (5th Cir. 1995), aff'g T.C. Memo. 1993-634; see also Rule 142(a); Foster v. Commissioner, T.C. Memo. 2012-207.

Petitioner contends that he engaged in his musical activities with the intent to make a profit and that his expenses for the years in issue were ordinary and necessary to his endeavor. Respondent maintains petitioner was not engaged in the trade or business of being a musician, so the expenses he incurred relating to his musical activities are not deductible expenses under section 162(a). Respondent contends petitioner had no profit motive once he left Chicago.

Although a reasonable expectation of profit is not required, the taxpayer's profit objective must be actual and honest. Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. Whether a taxpayer has an actual and honest profit objective is a question of fact to be answered from all of the relevant facts and circumstances. Hastings v. Commissioner, T.C. Memo. 2002-310; sec. 1.183-2(a), Income Tax Regs.

The pertinent regulations set forth a nonexhaustive list of factors that may be considered in deciding whether a profit objective exists. These factors include: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or

dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.; see also Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981). No single factor or group of factors is determinative. Golanty v. Commissioner, 72 T.C. at 426. While the focus of the test for whether a taxpayer engaged in an activity with the intent to make a profit is on the subjective intent of the taxpayer, greater weight is given to objective facts rather than to the taxpayer's mere statement of his or her intent. Sec. 1.183-2(a), Income Tax Regs.; see also Stasewich v. Commissioner, T.C. Memo. 2001-30. A final determination is made only after a consideration of all of the relevant facts and circumstances.

We do not believe it necessary to analyze each of the factors enumerated in section 1.183-2(b), Income Tax Regs., to determine whether petitioner engaged in his musical activities with an actual and honest objective of making a profit. Rather, we focus on the factors we believe more important and applicable in this case. Our analysis of these factors leads to the conclusion that petitioner's musical activities are a trade or business for purposes of section 162.

A.      <u>Expertise of the taxpayer</u>

One of the factors is the expertise of the taxpayer.  Sec. 1.183-2(b)(2), Income Tax Regs.  Petitioner has played the saxophone since the age of 8 and has played professionally since the age of 16.  Petitioner has studied under and performed with well-known musicians.  We conclude from his testimony that he was knowledgeable of the music industry during the years in issue.

B.      <u>Taxpayer's time and effort</u>

One of the factors is the time and effort expended by the taxpayer in carrying on the activity.  Sec. 1.183-2(b)(3), Income Tax Regs.  Respondent claims that petitioner worked full time as a software programmer and did not have time for a music career.  We disagree.  Petitioner was dedicated to his music career.  He organized a jazz festival in Wisconsin and recorded four CDs, including "Carswell" in 2009.  Petitioner's testimony was credible concerning the time he spent on his music career.  We have recognized that a taxpayer may engage in more than one trade or business at any one time.  <u>See</u> <u>Gestrich v. Commissioner</u>, 74 T.C. 525, 529 (1980), <u>aff'd without published opinion</u>, 681 F.2d 805 (3d Cir. 1982).  It is also well settled that the term "trade or business" includes the arts.  <u>See</u> <u>Churchman v. Commissioner</u>, 68 T.C. 696; <u>Vitale v.</u>

Commissioner, T.C. Memo. 1999-131, aff'd without published opinion, 217 F.3d 843 (4th Cir. 2000).

### C.    Similar activities

One of the factors is the success of the taxpayer in carrying on other similar or dissimilar activities.  Sec. 1.183-2(b)(5), Income Tax Regs.  The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable.  Id. Petitioner earned a living from his music before moving to Wisconsin.  Petitioner testified that he intended to be profitable again and that he was profitable in 2011.

Petitioner testified that the music industry has undergone changes over the years and that it is now difficult to make a profit.  He testified that many of the jazz clubs closed in Chicago and that there were not that many opportunities.  He further testified that less money is made when a musician plays another artist's music.  Petitioner contends that he made changes so he can become profitable. Petitioner moved to Wisconsin in part because the cost of living was lower and because he could continue to travel to Chicago and elsewhere.  For instance he will embark on a tour in Spain in summer 2013.  He referred to his time in Wisconsin as rebuilding years and stated that he would like to be able to leave the

software industry and pursue music full time. In addition petitioner wanted to change the course of his career, placing more emphasis on his own music and focusing on composing. He wants to leave behind a legacy of work.

D.     History of income or losses

One of the factors is the taxpayer's history of income or losses with respect to the activity. Sec. 1.183-2(b)(6), Income Tax Regs. We have found that "a history of losses is less persuasive in the art field than it might be in other fields", as economic success in the arts, frequently takes longer to achieve than success in other fields. Churchman v. Commissioner, 68 T.C. at 701-702. We believe that the arts include music. Petitioner had a series of losses from 2004 to 2010 and a small profit in 2011. Respondent contends that petitioner's small profit in 2011 could not offset years of sustained losses that total over $100,000; however, petitioner was able to explain these losses. The music industry changed, and petitioner's focus moved from performance to original composition and other aspects of music. Petitioner contends that he made adjustments and retooled his career and that he was profitable in 2011. A result of this retooling was the CD "Catharsis", which includes his original compositions.

E. <u>Financial status of taxpayer</u>

One of the factors is the financial status of the taxpayer. Sec. 1.183-2(b)(8), Income Tax Regs. The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that the activity is engaged in for profit. <u>Id.</u> Petitioner did not have substantial income or sources of capital. Petitioner earned income for his work in the computer software industry; however, the income was not considerable, and petitioner contends that he wants to work full time on his music.

F. <u>Elements of personal pleasure or recreation</u>

One of the factors is elements of personal pleasure or recreation. Sec. 1.183-2(b)(9), Income Tax Regs. The fact that the taxpayer derives personal pleasure from engaging in the activity is not sufficient to cause the activity to be classified as not engaged in for profit. <u>Id.</u> Petitioner derives pleasure from his music, but his goal is to make a profit. <u>See</u> <u>Churchman v. Commissioner</u>, 68 T.C. at 702. Petitioner testified that he wants to work in the music industry full time. Petitioner viewed himself as a professional musician, and his testimony supports this claim.

After considering all the facts and circumstances, we hold that petitioner was engaged in the trade or business of music during the years in issue.

II.    Other expenses and penalty

    A.    Expenses disallowed

During trial it became clear that some of petitioner's expenses did not pertain to his professional career in music. Petitioner's Schedule C-1 and Schedule C for 2009 relate to petitioner's musical activities; both Schedules C list only petitioner's name and report an expense for the depreciation of musical instruments. Petitioner proffered a depreciation schedule from his accountant for various instruments. The depreciation schedule includes a violin; however, petitioner testified that his wife owned the violin and that he did not play the violin. The depreciation deduction for petitioner's wife's violin should be disallowed for 2008 and 2009.

Petitioner testified that he taught a music class at Youth Initiative High School. Petitioner's mileage log for 2008 included expenses associated with teaching a music class in jazz history. Petitioner's expenses of commuting between his home and Youth Initiative High School are personal expenses and are not deductible. See Bowles v. Commissioner, T.C. Memo. 1993-222. Therefore, expenses relating to entries recorded as "YIHS" on the 2008 mileage log should be disallowed.

B.     Penalty

Respondent determined that petitioner is liable for accuracy-related penalties under section 6662(a) on the underpayments of tax for 2008 and 2009. Section 6662(a) and (b)(1) imposes a 20% penalty on the portion of an underpayment of tax attributable to negligence or disregard of rules or regulations.

Petitioner was engaged in the trade or business of music during the years in issue, and the only deductions that should be disallowed are minimal. Moreover, there is no indication that petitioner was negligent with respect to the resulting minimal underpayments of tax. Petitioner recognized his unfamiliarity with tax law and approached a certified public accountant, who was also a part-time musician, to prepare his 2008 and 2009 Federal income tax returns. Petitioner also testified that he provided the certified public accountant with his receipts and information regarding his expenses and income.

Accordingly, petitioner is not liable for accuracy-related penalties under section 6662(a) for the years in issue.

To reflect the foregoing,

Decision will be entered

under Rule 155.